UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SCOTT M.,[1]

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

1:21-CV-00095-LJV
DECISION & ORDER

On January 20, 2021, the plaintiff, Scott M. ("Scott"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On December 16, 2021, Scott moved for judgment on the pleadings, Docket Item 5; on May 16, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 6; and on June 7, 2022, Scott replied, Docket Item 8.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Scott applied for Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. See 42 U.S.C. § 423(c); see also Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989). A qualified individual may receive both DIB and Supplemental Security Income ("SSI"), and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. See 20 C.F.R §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Scott's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

Scott argues that the ALJ erred in two ways.  See Docket Item 5-1.  First, Scott claims that the ALJ improperly evaluated the opinions of S. Juriga, Ph.D., and Sarah Otwell, a psychiatric nurse practitioner.  Id. at 10-19.  Second, he argues that the ALJ needed to explain why there was no limitation for interacting with supervisors in the residual functional capacity ("RFC")[4] assessment.  Id. at 20-21.  This Court agrees that the ALJ erred and, because the error prejudiced Scott, remands the case to the Commissioner.

For claims filed on or after March 27, 2017, such as Scott's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources."  Angela H.-M. v. Comm'r of Soc. Sec., – F. Supp. 3d –, 2022 WL 4486320, at *4 (W.D.N.Y. 2020) (quoting 20 C.F.R. § 404.1520c(a)) (internal quotation marks omitted).  Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he] finds the medical opinions in the case record."  Id. (citing 20 C.F.R. § 404.1520c(b)).

The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the

---

[4] A claimant's RFC "is the most [he] can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.

treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  The ALJ is always required to "explain how [he] considered the supportability and consistency factors" because they are "the most important factors," and he "may, but [is] not required to, explain how [he] considered the [remaining] factors."  *Id.* § 404.1520c(b)(2).

### A.  Dr. Juriga's Opinion

Dr. Juriga provided an assessment of Scott's mental impairments as part of Scott's initial disability determination.  *See* Docket Item 4 at 43-45.  Dr. Juriga concluded that Scott did not have any severe mental impairments, noting the lack of sufficient evidence "to substantiate the presence" of an anxiety disorder or an obsessive-compulsive disorder.   *See id.* at 44; *see also* 20 C.F.R. § 404, Subpart P, Appendix A (discussing components of anxiety and obsessive-compulsive disorders under Listing 12.06).  The ALJ found Dr. Juriga's opinion to be "consistent with the available records" at the time of Dr. Juriga's review, but he also found that "additional records provided after the review supported some of [Scott's] allegations."  Docket Item 4 at 21-22 (citing *id.* at 255-419).  In other words, the ALJ found that Scott was more impaired than Dr. Juriga opined.

The ALJ failed to articulate how persuasive he found Dr. Juriga's opinion, and that was error.  *See* 20 C.F.R. § 404.1520c(b) ("[The Commissioner] will articulate in [its] determination or decision how persuasive [it] find[s] . . . all of the prior administrative medical findings in [the claimant's] case record."); *Jaleesa H. v. Comm'r of Soc. Sec.*,

4

580 F. Supp. 3d 1, 8-9 (W.D.N.Y. 2022) (holding as error ALJ's failure to explain how "he assessed [an] opinion in connection with the consistency and supportability factors . . . ."). But because the ALJ found that Scott was more impaired than Dr. Juriga opined, his failure to properly evaluate Dr. Juriga's opinion was harmless. *See Schillo v. Kijakazi*, 31 F.4th 64, 78-79 (2d Cir. 2022) (noting that an ALJ's improper evaluation of an opinion is procedural error subject to harmless error analysis). Contrary to Dr. Juriga's findings, the ALJ concluded that Scott's anxiety and obsessive-compulsive disorders were severe, medically determinable mental impairments. *Compare* Docket Item 4 at 17 (ALJ's finding that Scott had severe medically determinable mental impairments), *with id.* at 43-45 (Dr. Juriga's finding that Scott had no severe, medically determinable mental impairments). And the ALJ considered those severe impairments in formulating Scott's RFC. *See* Docket Item 4 at 19-22. For that reason, the failure to properly address Dr. Juriga's opinion was harmless. *See Baker o/b/o Baker v. Berryhill*, 2018 WL 1173781, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record."); *accord My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 106 (W.D.N.Y. 2021).

### B.  NP Otwell's Opinion

On February 5, 2020, NP Otwell completed a medical source statement evaluating Scott's mental health. *See* Docket Item 4 at 339-44. NP Otwell discussed Scott's panic disorder, noting that he had "responded well to medication regimen and individual therapy" but was "still very limited by panic attacks and anxiety." *Id.* at 339. More specifically, NP Otwell described Scott as "anxious" and having a "difficult time

5

leaving [the] house, even to take [his] sons to school at [the] end of [the] road." *Id.* She noted that he "ha[d] not been able to work" and that he "misses most holiday events." *Id.*

In the check-box portion of the statement, NP Otwell opined that Scott had "[n]o useful ability to function" in six different categories necessary for unskilled work: (1) maintaining attention for two hours at a time; (2) maintaining regular attendance and being punctual within customary, usually strict tolerances; (3) sustaining an ordinary routine without special supervision; (4) working in coordination with or near others without being unduly distracted; (5) completing a normal workday and workweek without interruptions from psychologically based symptoms; and (6) dealing with normal work stress. *Id.* at 341. She also opined that Scott had no useful ability to function in the areas of interacting appropriately with the general public, traveling in unfamiliar places, and using public transportation. *Id.* at 342. And, particularly significant to Scott's claim here, she concluded that Scott would be absent "[m]ore than four days per month" due to his impairments or treatment. *Id.* at 343.

The ALJ evaluated NP Otwell's opinion, finding it "not entirely consistent with the records." *Id.* at 22. The ALJ noted that Scott "engage[d] in work activity during the relevant period, including managing multiple blogs," and that he "homeschooled his son, sold things online for money, and engaged in a broad range of activities including travel with the family, family gatherings, birthday parties, sporting events, and work conferences." *Id.* (citing Docket Item 4 at 213-54). But the ALJ did not otherwise address whether he found NP Otwell's opinion persuasive. *See id.*

6

Just as the ALJ did with respect to the opinion of Dr. Juriga, the ALJ erred by failing to articulate how persuasive he found NP Otwell's opinion.  *See* 20 C.F.R. § 404.1520c(b); *Jaleesa H.*, 580 F. Supp. 3d at 8-9.  But unlike the ALJ's improper evaluation of Dr. Juriga's opinion, the ALJ's insufficient evaluation of NP Otwell's opinion was not harmless and requires remand.

NP Otwell opined that Scott had several significant limitations in connection with his mental health issues. *See* Docket Item 4 at 339-44.  For example, as the ALJ noted, *id.* at 22, she opined that Scott was "serious[ly] limited" or worse in nearly every category necessary to perform unskilled work*, see id.* at 341.  Likewise, and as the ALJ noted, *id.* at 22, she opined that Scott would be likely to miss more than four days of work each month due to his mental health issues*, see id.* at 343.

The ALJ found that "[t]he assessment of [NP] Otwell is not entirely consistent with the records," but he did not say whether that vague statement meant that NP Otwell's opinion was persuasive, unpersuasive, or something in between.  *Id* at 22*.*  And while he referred to activities that Scott admitted performing, the ALJ did not even try to explain what "records" NP Otwell's opinion was "not entirely consistent with."  *Id*.  So the ALJ did not adequately address the supportability and consistency factors that the ALJ now is required to address.  *See Jaleesa H.*, 580 F. Supp. 3d at 9 ("Here, the ALJ did not *explain* anything—instead, he made a conclusory statement that Dr. Fabiano's opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors . . . .").

7

Moreover, because the ALJ largely ignored the significant limitations about which NP Otwell opined in formulating Scott's RFC, the ALJ's error was far from harmless. For example, the ALJ did not explain why Scott might be able to pay attention for two hours at a time, sustain an ordinary routine without special supervision, work near others without being unduly distracted, or deal with normal work stress—all of which NP Orwell found that Scott had no useful ability to do, Docket Item 4 at 341. *See generally id.* at 19-22 (RFC and ALJ's explanation for it). Nor did the ALJ explain how the RFC somehow incorporated those limitations or why it did not need them. *See id.* So the failure to properly evaluate NP Otwell's opinion undoubtedly prejudiced Scott.

Even worse, the ALJ only mentioned—and otherwise ignored—NP Otwell's explicit opinion that Scott likely would miss at least four days of work each month due to his issues. Indeed, at Scott's hearing, the ALJ asked the vocational expert, "If someone's missing more than one day of work a month, does that affect jobs," *id.* at 38, and the vocational expert replied that no jobs would be available for someone who missed more than a day a month. *Id.* So the ALJ's inexplicable failure to address why he rejected NP Otwell's opinion about absences leaves a real question about Scott's ability to work. *See Pamela M. v. Comm'r of Soc. Sec.*, 2022 WL 17221865, at *4 (W.D.N.Y. Dec. 14, 2022); *see also Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) ("[I]n rejecting the portion of [a treating provider's] opinion stating that [the plaintiff] would miss two to three days of work per month, the ALJ stated only that he gave little weight to that opinion[;] . . . [t]he ALJ failed to explain why he would adopt [the treating provider's] opinions concerning [the plaintiff's] marked limitations but reject her opinion that would likely lead to a finding of disability."); *Prieto v. Comm'r of Soc.*

*Sec.*, 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) ("[R]ather than analyzing the supportability and consistency factors as applied to Dr. Long's opinion, the only reasoning the ALJ provided was entirely conclusory; the ALJ said only that Dr. Long's opinion was 'supported by the medical evidence of record and by her underlying examination.' Such a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand.") (internal citation omitted).

The ALJ did point out that Scott admitted being able to do some work—managing blogs online, homeschooling his son, and selling things online. Docket Item 4 at 22. And the ALJ noted that Scott traveled with his family, went to family gatherings and parties, and attended conferences and sporting events. *Id.* But the ability to interact socially and perform some work-like activities is not the same as being able to handle the stress of working outside the home, which NP Otwell said Scott no had useful ability to do. *See id.* at 341; *see also Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998) (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)) ("'[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals,' such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'"). And even if it did, that would still not address NP Otwell's opinion about Scott's absences from work each month.

In sum, the ALJ failed to adequately address NP Otwell's opinion, and that failure undoubtedly prejudiced Scott. On remand, the ALJ must properly evaluate all the medical opinions in the record, including by explicitly addressing the supportability and

9

consistency factors, so that he can craft an RFC that is supported by substantial evidence.[5]

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 6, is DENIED, and Scott's motion for judgment on the pleadings, Docket Item 5, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: February 7, 2023
Buffalo, New York

　　　　　　　　　　　　　　　　　　　　/s/ *Lawrence J. Vilardo*
　　　　　　　　　　　　　　　　　　　　LAWRENCE J. VILARDO
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[5] The Court "will not reach the remaining issues raised by [Scott] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020) ("However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues.") (citations omitted).